IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FARLAN T. KNAPP,                                    05-CV-614-BR

                    Plaintiff,                      OPINION AND ORDER

v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

                    Defendant.


**RICHARD A. SLY**
1001 S.W. 5th Avenue, Suite 1901
Portland, Oregon  97204
(503) 224-0436

**LINDA ZISKIN**
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, OR  97035
(503) 534-3563

            Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**JOHANNA VANDERLEE**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3858

       Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Farlan T. Knapp brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Act.  42 U.S.C. §§ 401-433, 1381-83f.  This Court has jurisdiction under 42 U.S.C. § 405(g).

Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.

2  -   OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Knapp's application was denied initially and on reconsideration.  Tr. 30-33, 47-48.  Knapp requested a hearing, which was held before an Administrative Law Judge (ALJ) on May 4, 2004.  Tr. 294-325.  Knapp was represented by an attorney at the hearing.

The ALJ issued a decision in which he found Knapp was not entitled to benefits.  That decision became the final decision of the Commissioner on June 14, 2004, when the Appeals Council denied Knapp's request for review.  Tr. 6-8.  *See also* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Knapp applied for DIB and SSI on October 25, 2002, alleging disability beginning June 6, 1997, due to hemophilia and depression.  Tr. 74, 116.  He was 44 years old at the time.  He has a graduation equivalency diploma and has performed past work as a production manager and an insulation installer.  He testified he was terminated from his last job because he has HIV. Tr. 114, 301-04.  After losing his job, he manufactured methamphetamine for one year to earn money.  Tr. 306.

Since his release from prison, he has worked as a temporary employee three days a week, and he babysits his granddaughter when he is not working.  Tr. 307, 310-11.

3  -   OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it

supports or detracts from the Commissioner's decision.
*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The
Commissioner's decision must be upheld even if the "evidence is
susceptible to more than one rational interpretation." *Andrews,*
53 F.3d at 1039-40.  The court may not substitute its judgment
for that of the Commissioner. *Batson,* 359 F.3d at 1193.


## ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential
process for determining whether a person is disabled. *Bowen
v. Yuckert,* 482 U.S. 137, 140 (1987). *See also* 20 C.F.R.
§§ 404.1520, 416.920.  The claimant bears the burden of proof at
Steps One through Four. *See Tackett v. Apfel*, 180 F.3d 1094,
1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ gave Knapp the benefit of the doubt and
found he has not engaged in substantial gainful activity since
his alleged disability onset date.  Tr. 23. *See also* 20 C.F.R.
§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  This finding is not in
dispute.

At Step Two, the ALJ found Knapp had "severe" impairments,
including a history of hemophilia, hepatitis C with no symptoms,
HIV with no symptoms, and polysubstance abuse.  Tr. 26. *See also*
20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  This finding
is in dispute.

At Step Three, the ALJ determined none of Knapp's impairments, separately or in combination, met or equaled a Listed Impairment.  Tr. 26.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  This finding is in dispute.

The ALJ assessed Knapp with the residual functional capacity (RFC) to perform light work.  Tr. 26.  *See also* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.  This finding is in dispute.

At Step Four, the ALJ found Knapp was able to perform his past relevant work as a production manager.  Tr. 26.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  This finding is in dispute.

Because the ALJ determined at Step Four that Knapp was not disabled, the ALJ did not reach Step Five.

## DISCUSSION

Knapp contends the ALJ erred by (1) failing to develop the record fully and fairly, (2) failing to provide legally sufficient reasons for rejecting the opinions of treating and examining physicians, (3) rejecting Knapp's testimony, (4) rejecting lay-witness testimony, (5) failing to assess properly whether Knapp's impairments equaled a Listed Impairment at Step Three, (6) failing to consider Knapp's impairments in

combination, (7) failing to consider whether Knapp could sustain full-time work, and (8) failing to pose a complete hypothetical at Step Five.[1]

## I.    The ALJ properly developed the record.

Knapp argues the ALJ was obligated to request statements from Knapp's physicians about the work he is able to do despite his impairments in light of the fact that the record is largely silent on this matter.

20 C.F.R. §§ 404.1513 and 416.913 discuss the types and sources of medical evidence the ALJ shall consider in the disability evaluation.  Specifically, §§ 404.1513(b) and 416.913(b) list the information that medical reports should include, such as (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and (6) a "statement about what [the claimant] can still do despite [his] impairment(s) based on the acceptable medical source's findings on the factors [listed above]."  Sections 404.1513(b)(6) and 416.913(b)(6) also provide: "Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete."

Sections 404.1513(c) and 416.913(c), titled "Statements

---

[1] As noted, the ALJ did not reach Step Five.  The Court, therefore, does not need to address this argument.

about what you can still do," explain that the ALJ "will consider residual functional capacity assessments made by State agency medical and psychological consultants and other program physicians and psychologists to be 'statements about what you can still do' made by non-examining physicians and psychologists based on their review of the evidence in the case record."

Thus, contrary to Knapp's contention, these sections do not mandate that the ALJ request statements from all of a claimant's physicians about what the claimant can still do. Sections 404.1513(b)(6) and 419.913(b)(6) provide only that the ALJ will request a statement about what the claimant can still do from an unspecified source, and §§ 404.1513(c) and 416.913(c) explain this source may be a state medical consultant.

In Knapp's case, the ALJ relied on two physicians' assessments about what Knapp can still do.  Tr. 25.  Donald Ramsthel, M.D., examined Knapp in January 2003 and found he could stand, walk, and sit for two hours before needing a break; could lift and carry 30 pounds frequently; was not limited in hearing, speaking, or traveling; and had mild limitations in handling objects.  Tr. 233-36.

Linda Jensen, M.D., a state-agency physician, reviewed Knapp's medical records and completed an RFC in April 2003.  Tr. 252-58.  She found Knapp could occasionally lift 30 pounds and frequently lift 10 pounds, stand or walk for six hours in an

eight-hour workday, sit for six hours in an eight-hour workday,
and was otherwise unlimited.  Tr. 252-58.

Both doctors found Knapp had few, if any, symptoms despite
his diagnoses of hemophilia, HIV, and hepatitis C.  These
findings were supported by substantial evidence in the record as
noted below.  Thus, Knapp's contention that the record does not
contain statements from physicians about the work he can still do
is without merit.

In addition, the regulations clearly place the burden on the
claimant to provide medical evidence of disability.  20 C.F.R.
§§ 404.1512(c), 416.912(c).  Sections 404.1512(d)(1) and
416.912(d)(1) provide the ALJ will help the claimant obtain
medical reports by making an initial request and one follow-up
request.  If the evidence provided by a claimant's medical
sources is inadequate for the ALJ to determine whether a claimant
is disabled or if the evidence provided by a claimant's medical
source "contains a conflict or ambiguity that must be resolved,"
the ALJ will recontact that medical source.  *See* 20 C.F.R.
§§ 404.1512(e), 416.912(e).  If other evidence in the record,
however, is sufficient for the ALJ to determine whether the
claimant is disabled or to resolve a conflict or ambiguity in the
medical evidence, the ALJ need not recontact the medical source.
*See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

On this record, the Court reasonably infers the ALJ did not

find it necessary to recontact Knapp's medical providers because any conflicts or ambiguities in the evidence furnished by them could be resolved by reference to other evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)(the court may draw specific and legitimate inferences from the ALJ's decision).

Accordingly, the Court finds the ALJ did not err in his development of the record.

## II. The record supports the ALJ's determination that Knapp's testimony was not credible.

Knapp argues the ALJ wrongly rejected his testimony "only because [he] has not pursued aggressive treatment."  The Court disagrees.

The ALJ is not required to credit every allegation of disabling pain because disability benefits then would be available on demand.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  After a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, however, the ALJ must provide clear and convincing reasons supported by substantial evidence in the record for rejecting the claimant's subjective claims.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).  *See also Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002).

When assessing a claimant's credibility, the ALJ may consider (1) ordinary techniques of credibility evaluation such as the claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

Here the ALJ properly complied with this standard. He found Knapp was less than fully credible for at least four principal reasons. First the ALJ determined Knapp's activities of daily living were inconsistent with the degree of disability that he alleged. *See Thomas v. Barnhart*, 278 F.3d 958-59. Knapp alleged symptoms of disabling fatigue, soreness, and inability to tolerate stress, but the ALJ found the evidence showed Knapp was able to work part-time; to babysit his toddler granddaughter daily; to read for pleasure; to drive daily; to cook; to clean; to take care of his dogs; to perform woodwork, handiwork, and yard work; to fish; to visit friends regularly; and to work on

his car.

The ALJ also found the objective medical evidence did not substantiate Knapp's claim that he suffered from such severe limitations that he could not work full-time.  To the contrary, the ALJ determined Knapp suffered few, if any, symptoms despite having HIV, hepatitis C, and hemophilia.  Tr. 24.

In addition, the ALJ found Knapp's unexplained failure to seek treatment for his allegedly disabling conditions further compromised the reliability of his claims:  Knapp did not comply with the therapeutic recommendations of his physicians for treating HIV, hepatitis C, and hemophilia, and he testified he did not take any medications for these conditions.  *See* 20 C.F.R. §§ 404.1530(b), 416.930(b)(noncompliance with prescribed therapies precludes entitlement to benefits).

The ALJ also noted Knapp declared the side effects of HIV therapy were worse than the disease and stated he was afraid to give himself plasma injections because he believes that is how he contracted HIV.  Neither of these reasons, however, are considered sufficient for failing to follow prescribed treatment. *See* 20 C.F.R. §§ 404.1530(c), 416.930(c).  In addition, Knapp declined without explanation treatment for his enlarged liver related to hepatitis C.

Finally, the ALJ found Knapp was not a reliable historian and made several inconsistent statements regarding his illicit

drug use and incarceration.  For instance, the ALJ noted Knapp
admitted to occasional drinking in December 1998, but he denied
using illegal drugs.  Tr. 23.  In April 2000, however, he was
incarcerated for drug use, and in January 2003 he reported he had
been using methamphetamine for the past six years.  Tr. 23.
Knapp also inconsistently reported he was convicted in 1986 for
domestic violence against his ex-wife and for possessing
methamphetamine.  Nevertheless, according to Knapp, he was not
imprisoned or on probation until ten years later.  Tr. 23.

In summary, the Court finds the ALJ did not err when he
rejected Knapp's testimony as not credible because he gave clear
and convincing reasons supported by substantial evidence in the
record for doing so.

**III. The ALJ credited lay-witness testimony.**

The ALJ must provide reasons germane to the lay witness for
rejecting his testimony, but the ALJ is not required to discuss
nonprobative information.  *See Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001).  *See also Vincent ex. rel. Vincent v. Heckler*,
739 F.2d 1393, 1394-95 (9th Cir. 1984).

According to Knapp, the ALJ erred when he failed to give
reasons for rejecting statements of lay witnesses who filled out
third-party worksheets.

In his opinion, the ALJ discussed the statements of Merry
Anderson and Amber Knapp.  Tr. 23.  The ALJ noted Anderson

described Knapp's daily activities consisted of taking care of
his daughter, dogs, and house; watching TV; helping his
granddaughter with her homework; staying busy with different
things; painting walls or hanging pictures or shelves as needed;
and doing laundry, cooking, cleaning, and "home stuff."  Tr. 23.
The ALJ also noted Amber Knapp reported Knapp gets along well
with family members and friends, has normal conversations and
exhibits normal behavior, visits friends twice a week,
participates in social activities occasionally, goes to the
market three times a week, is able to drive in unfamiliar places
and drives every day, goes fishing, prepares his own meals and
cooks for others once or twice a week, does laundry and other
housecleaning, performs home and car repairs, and does not take
any medication.  Tr. 23.

        Knapp, however, asserts Amber Knapp did not state he gets
along well with family members as indicated in her response of
"doesn't" to the question, "How does [the claimant] get along
with family members?"  Tr. 136.  Nevertheless, Amber Knapp stated
Knapp gets along well with friends, and friends visit him a
couple times a week.  Tr. 138.  In light of the fact that Knapp
testified he lives in a motor home in his daughter's backyard,
visits with her every day, and takes care of his granddaughter
every day, it is not unreasonable for the ALJ to interpret
Amber Knapp's response as indicating that Knapp does not interact

with family members other than her and her daughter and that he gets along well with them.

In any event, even if the ALJ's finding constitutes a rejection of Amber Knapp's response, it is harmless error. Assuming that "doesn't" meant Knapp does not get along with family members, the ALJ could have rejected this part of Amber Knapp's testimony for the germane reason that it is inconsistent with Knapp's own testimony that he gets along well with his daughter and granddaughter, who are family members.

Accordingly, the Court finds the ALJ did not err in his credibility determination regarding the lay-witness testimony.

## IV. The record supports the ALJ's assessment of the medical evidence.

Knapp contends the ALJ erred when he rejected the opinion of Dr. Ramsthel that Knapp has a mild limitation in his ability to handle objects. He argues the ALJ ignored "multiple references throughout the medical record to [his] diagnosed carpal tunnel syndrome," including the "positive Tinel's sign on the right" found by Victoria Carvalho, M.D.

The ALJ must provide clear and convincing reasons supported by substantial evidence in the record for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If a treating physician's opinion is contradicted by another doctor, the Commissioner may reject it by

15 -    OPINION AND ORDER

providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id*. at 600-01. A treating physician's opinion is given controlling weight only when his opinion is well supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantiated evidence" in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The record reflects the ALJ thoroughly reviewed the medical evidence relating to Knapp's alleged carpal-tunnel syndrome. The ALJ noted David Noall, M.D., examined Knapp in December 1997 and reported Knapp had filed a worker's compensation claim for work-related carpal-tunnel syndrome six to nine months earlier. The claim was denied. Tr. 19. Although Knapp did not provide any evidence, he told Dr. Noall that he had nerve-conduction studies performed on his wrists. Tr. 19. Dr. Noall found Knapp's hands to be well-calloused, and Knapp had negative Tinel's sign. Tr. 19.

The ALJ noted Knapp told Tom DeLoughery, M.D., in March 1996 that he had been diagnosed with carpal-tunnel syndrome in November 1995. Dr. DeLoughery did not conduct his own physical examination or laboratory testing, but he credited Knapp's complaints of some pain and of difficulty doing activities. Tr. 19.

The ALJ noted Dr. Carvalho evaluated Knapp for carpal-tunnel syndrome in December 1998.  Dr. Carvalho assessed a positive Tinel's sign in only the right median nerve at the wrist and negative Tinel's signs at both ulnar nerves at the elbows. Tr. 19.  Pinprick, position, and vibratory sensation were intact in both upper and lower extremities bilaterally.  Tr. 19. Stereoagnosis, graphesthesia, and two-point discrimination were normal in both hands.  Tr. 19-20.  Knapp did not have any swelling or effusion of any of his joints.  Dr. Carvalho observed Knapp's hands were calloused, and Knapp reported he was able to do woodworking.  Dr. Carvalho did not assess any limitations due to Knapp's alleged carpal-tunnel syndrome.  Tr. 20.

Finally, the ALJ noted Dr. Ramsthel assessed Knapp in January 2003 as having a normal range of motion in his elbow, wrist, and finger/thumb joints and negative Tinel's sign. Tr. 20.  Dr. Ramsthel observed some swelling and discoloration below Knapp's right elbow joint, which was three-quarters of an inch larger than the left one.  Tr. 20.  Dr. Ramsthel found this characteristic of a hematoma formation in the muscle area was probably related to Knapp's hemophilia.  Tr. 20.  Despite the negative findings for carpal-tunnel syndrome, Dr. Ramsthel opined Knapp's ability to handle objects was "mildly limited due to his wrists."  Tr. 236.

Based on this record the ALJ concluded:

> [D]espite the references of a history of carpel tunnel
> syndrome, the referred diagnosis has not been confirmed
> by the use of medically acceptable diagnostic
> techniques, such as nerve conduction studies and/or
> significant findings on examination.  The claimant
> reported he had such nerve conduction studies in the
> past but provided no evidence about them.  In reference
> to findings on examination, the same have been
> generally unremarkable.  Therefore, I conclude the
> claimant has not had a medically determinable severe
> carpal tunnel syndrome at any time since his alleged
> onset date.

Tr. 22.  Accordingly, the ALJ rejected Dr. Ramsthel's finding
that Knapp had a mild limitation in handling on the ground that
he did "not find any support in the record to assign a limitation
to handle object[s] as a result of problems with his wrists."
Tr. 25.

As the ALJ noted, Dr. Ramsthel's opinion was not based on
acceptable diagnostic techniques, but only on Knapp's discredited
subjective reporting.  For this reason, Dr. Ramsthel's opinion
was entitled to little evidentiary weight.  Dr. Ramsthel also
was the only examining physician to assess wrist limitations.
Even Dr. Carvalho, whose opinion, according to Knapp, supports
that of Dr. Ramsthel, did not assess any wrist limitations.
Thus, the Court finds the ALJ did not err when he discredited
Dr. Ramsthel's opinion because he gave specific and legitimate
reasons supported by substantial evidence in the record for doing
so.

Knapp also asserts the ALJ erred by not including carpal-tunnel syndrome as one of Knapp's severe impairments and by failing to include handling limitations in his RFC.  The ALJ, however, determined the medical evidence does not support a diagnosis of carpal-tunnel syndrome nor work-related functional impairments, and the Court finds the record contains substantial evidence to support the ALJ's determination.  The Court, therefore, need not address these claims by Knapp.  *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).  *See also* Social Security Regulation (SSR) 96-3p.

**V.    The record supports the ALJ's finding at Step Three that Knapp's impairments do not meet or equal a Listed Impairment.**

According to Knapp, the ALJ failed at Step Three to adequately compare Knapp's impairments to the criteria for Listed Impairments.  Knapp argues he "may" meet Listed Impairment 7.08 for Coagulation defects although expert testimony would be needed to decide "whether infusion of Factor VIII [plasma] constitutes a 'transfusion.'"  Knapp also argues "it would be perfectly reasonable to find that [his] hemophilia effectively equals one of the other blood disorders" required to meet Listed Impairment 14.08G for HIV infection.

A Social Security claimant bears the burden to prove his impairment or combination of impairments meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,

and is sufficiently severe to constitute a disability
automatically.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th
Cir. 2005).  "An ALJ is not required to discuss the combined
effects of a claimant's impairments or compare them to any
listing in an equivalency determination, unless the claimant
presents evidence in an effort to establish equivalence."  *Id*. at
683.

When determining whether a claimant's combination of
impairments equals a particular listing, the ALJ must consider
whether the claimant's "symptoms, signs, and laboratory findings
are at least equal in severity to the listed criteria."  *See*
20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3).  For an impairment to
be equivalent to a Listed Impairment, the set of symptoms, signs,
and laboratory findings in the medical evidence must be compared
with and found to be equivalent in terms of medical severity and
duration to the set of symptoms, signs, and laboratory findings
specified for the Listed Impairment.  SSR 86-8.

Here there is not any evidence that Knapp or his counsel
advanced an equivalency theory at the hearing before the ALJ.
Nevertheless, the ALJ considered whether any of Knapp's
impairments alone or in combination met or equaled the criteria
of a Listed Impairment.  Tr. 22.  In fact, the ALJ specifically
stated he examined Listed Impairments 7.08 (Coagulation defects),
5.05 (Chronic Liver Disease), 14.08 (HIV infection), and 12.09

(Substance Addiction disorders).  Tr. 22.  He found "no treating
or examining physician has reported findings similar in severity
to the descriptions provided in 7.08, 5.05 and 14.08."  He also
found Knapp could not meet the requirements of 12.09 because he
did not have chronic liver disease.  Tr. 22.  As noted, this
Court may not substitute its judgment for that of the
Commissioner even when evidence is susceptible to more than one
rational interpretation.  *See Batson,* 359 F.3d at 1193.

In addition, this Court will not remand for further Step-
Three analysis based on Knapp's speculative claim that he "may"
be able to establish equivalence to Listed Impairment 7.08 for
coagulation defects if he could get an expert witness to testify
that plasma injections constitute "transfusions" within the
meaning of the regulation.  Not only is this too little too late,
Knapp has not presented any evidence that he ever had a
"spontaneous hemorrhage requiring a transfusion" much less three
times in five months as required under the regulations.

Knapp's argument that it would be "reasonable" to find
hemophilia equals one of the blood disorders under 14.08G in
order to prove equivalency to Listed Impairment 14.08 for HIV
infection is also without merit.  To prove that HIV infection
meets Listed Impairment 14.08 based on one of the three listed
hematologic abnormalities (Anemia, Granulocytopenia, and
Thrombocytopenia), a claimant first must show he meets the

criteria under the specific Listed Impairment for one of those abnormalities. For example, to qualify as having anemia, the claimant would have to show that he satisfies the requirements of Listed Impairment 7.02. Thus, even if hemophilia was included as one of the qualifying hematologic abnormalities under Listed Impairment 14.08G or was found to equal one of the listed blood disorders, Knapp would not be able to show equivalency because the ALJ already found, based on this record, that Knapp does not meet or equal the requirements of Listed Impairment 7.08 for hemophilia. Tr. 22.

In summary, the Court finds the ALJ did not err in his evaluation that Knapp's impairments did not meet or equal a Listed Impairment and gave legally sufficient reasons for his determination supported by substantial evidence in the record.

**VI.  The record supports the ALJ's assessment of Knapp's RFC.**

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. When assessing a claimant's RFC, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony. SSR 96-5p.

Here the ALJ assessed Knapp with the RFC to perform light work. Tr. 25. Knapp contends the ALJ erred in this assessment because he failed to include Knapp's limitation in handling

objects, his need to avoid environmental hazards, and his
inability to complete a forty-hour work week.  Knapp also argues
the combined effect of his severe impairments translates into
significant functional limitations that the ALJ failed to include
in his RFC assessment, but Knapp fails to identify those
limitations.  Finally, Knapp argues the ALJ erroneously failed to
include Knapp's functional limitations in the hypothetical posed
to the VE.  Tr. 323.

As noted, the ALJ properly discredited any limitation in
handling objects because it was not supported by acceptable
medical findings.  The ALJ, therefore, was not required to
include it in Knapp's RFC assessment.

Knapp's limitation from exposure to hazards was assessed on
March 11, 1999, by John Pesand, M.D., a state-agency reviewing
physician.  Tr. 211.  Next to the box he checked for "the need to
avoid hazards," Dr. Pesand wrote "due to hemophilia."  Tr. 211.
Knapp contends the ALJ erred when he failed to include the
limitation of needing to avoid exposure to hazards in the RFC
assessment.

The ALJ stated he rejected the limitation because it was not
endorsed by a physician.  Tr. 25.  The ALJ, however, also found
the limitation was inaccurate because Knapp was asymptomatic and
did not pursue treatment for hemophilia.  In addition, check-off-
box assessments without supporting clinical findings are entitled

23 -   OPINION AND ORDER

to little weight.  *Young v. Heckler*, 803 F.2d 963 (9th Cir. 1986).  Thus, this Court agrees with the Commissioner that this error was harmless in light of the fact that the ALJ's additional findings constitute specific and legitimate reasons for rejecting the disfavored, unsupported opinion of a nontreating, nonexamining physician when assessing Knapp's RFC.

Finally, Knapp asserts the ALJ erred when he failed to identify evidence that specifically contradicted Knapp's testimony that he is unable to sit, to stand, and to walk for a combined total of eight hours and, as a result, cannot sustain full-time work.  Knapp, however, has the burden to establish that he cannot sustain full-time work, and the ALJ found Knapp did not meet this burden.  *See* 42 U.S.C. § 423(d)(1)(A).  The ALJ properly discredited Knapp's testimony, found the medical evidence did not support the symptoms alleged by Knapp, and pointed out that Knapp also failed to comply with prescribed medical treatment.  As noted, even if Knapp had produced objective evidence to support his alleged limitations, his noncompliance with prescribed therapies for HIV infection, hepatitis C, and hemophilia would preclude his entitlement to benefits.

Accordingly, the Court finds the ALJ did not err when he excluded from his RFC assessment that Knapp had a sustainability limitation because such a limitation was not supported by

substantial evidence in the record.

**CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this case.

IT IS SO ORDERED.

DATED this 7th day of June, 2006.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge